An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-550

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

JAMES B. TAYLOR FAMILY LIMITED
PARTNERSHIP, JAMES B. TAYLOR, and
MARY ANN TAYLOR,
    Plaintiffs,

v.
                              Caldwell County
                              No. 12-CVS-1041

BANK OF GRANITE,[1]
    Defendant.


Appeal by Plaintiffs from Order entered 20 December 2012 by Judge H. William Constangy, Jr., in Caldwell County Superior Court. Heard in the Court of Appeals 9 October 2013.

> *Law Offices of Matthew K. Rogers, PLLC, by Matthew K. Rogers, for Plaintiffs.*
>
> *Moore & Van Allen PLLC, by Scott M. Tyler, Joshua D. Lanning, and Christopher D. Tomlinson, for Defendant.*

---

[1] The trial court's 20 December 2012 order lists Defendant as "BANK OF GRANITE." On 28 June 2013, however, Defendant moved this Court for an order substituting "CommunityOne Bank, N.A." for Bank of Granite because CommunityOne Bank, N.A. is the surviving entity of a merger with Bank of Granite. We granted that motion on 15 October 2013. Therefore, we list the original party name in the caption, pursuant to the custom and practice of this Court, and use the name of the substituted party elsewhere in this opinion.

STEPHENS, Judge.

*Procedural History and Factual Background*

This case arises from proceedings surrounding the 14 September 2012 foreclosure sale of three properties owned by Plaintiff James B. Taylor Family Limited Partnership ("FLP"), the borrower. A hearing by the Clerk of Superior Court to determine whether to authorize foreclosure was set for 8 August 2012. On 7 August 2012, Plaintiffs James B. Taylor ("Mr. Taylor"), Mary Ann Taylor, and FLP filed suit against Defendant Bank of Granite Association, now CommunityOne Bank, N.A. ("Defendant"), and alleged the following:

Prior to 1994, Mr. Taylor owned and operated a construction business. Plaintiffs received loans from Defendant in 1994 and 1995 amounting to $1,697,061.51 for the construction of Property 1. Defendant loaned Plaintiffs $1,489,065 on 23 October 1996 for the construction of Property 2 and the purchase of the surrounding land. These loans were consolidated on 23 November 1998 into a $3,100,000 note. Full payment on the 1998 note was due by 3 December 2013.

Defendant loaned Plaintiffs an additional $3,500,000 on 16 February 2000 in order to build and lease Property 3, a facility

for use by Broyhill Furniture. The 2000 note was due at the end of a twenty-year term. "The 2000 [note] was contingent on and relied on income received relating to the Broyhill [twenty-year] lease."[2] That same day, Plaintiffs signed a guaranty agreement, promising to be liable on the 2000 note. "The [g]uaranty [a]greement was a part of, conditioned on[,] and dependent on the 2000 [note] and lease terms."[3] Defendant loaned Plaintiffs $1,200,000 on 18 October 2000 so that they could buy and rent the property adjacent to Property 2.

One year later, on 4 October 2001, the parties decided to split the loan relating to Property 1 and Property 2. Therefore, Plaintiffs signed a $2,350,000 note on Property 1 and a guaranty agreement. Plaintiffs signed a $2,500,000 note on Property 2 and a guaranty agreement. Both notes were set to mature on 4 October 2006. Plaintiffs allege that they signed both guaranty

---

[2] Though Plaintiffs allege that payment on the 2000 note was "contingent on" the receipt of income from Property 3, an examination of the note, attached to Plaintiffs' complaint as Exhibit 3, indicates that "the entire remaining indebtedness" was required to be paid by 15 December 2020. By its terms, the 2000 note states that Plaintiffs were not required to make payments during the period leading up to 14 January 2011 unless they secured a tenant. After that date, however, Plaintiffs were required begin repayment whether they procured a tenant or not.

[3] A review of the attached agreement does not support this allegation.

agreements pursuant to promises by Defendant that rent payments for the respective properties would be used to pay the loans.

In September of 2005, Plaintiffs became unable to make payments on the notes for Properties 1 and 2 using the rent received from their tenants. When Plaintiffs informed Defendant of this fact, Plaintiffs allege that Defendant "acknowledged" the notes "were reliant on sufficient tenant rental income to pay principal and interest." Plaintiffs further allege that Defendant "expressly waived Plaintiffs['] default for [the notes]." The parties then orally modified their agreement "so that Plaintiff[s] would pay interest only when there were not sufficient tenants in the relevant property, but when there were sufficient tenants, Plaintiff[s] would make principal payments as well as interest."

Plaintiffs accumulated "sufficient tenant income" to make payments on the principal by October of 2006, when the notes were set to mature by their written terms. Nonetheless, Plaintiffs "*understood* that the term of both the loans . . . was for so long as it took Plaintiff[s] to pay off the loans according to the rental[-]tenant[-]occupancy formula agreed with [Defendant]." (Emphasis added).

> 56. At all times, [Defendant] was aware of the lease terms and the "spread" between the

> money Plaintiff[s] received in rental income from leases and the money required to pay the principal of the loans back.
>
> 57. [Defendant] loaned money based on a formula allowing Plaintiff[s] to profit from leases with reference to the terms of the leases for the [p]roperties.

The complaint describes a number of ways in which Defendant was allegedly aware of Plaintiffs' financial condition.

Defendant sought to sell the three loans in October of 2008 for 50% of the amount owed by Plaintiffs. That same month, Defendant "demanded that Plaintiff[s] repay all loans relating to Property 1, Property 2[,] or Property 3 immediately . . . ." Alternatively, Defendant "demanded" that Plaintiffs "consolidate the loans into a single note with [a] much shorter term." Defendant gave Plaintiffs six weeks to decide. When Plaintiffs objected to these "demands" as "not right" and accused Defendant of "strong-arming" them, one of Defendant's vice presidents agreed, but said the matter was out of his control. Believing they had no other "practical choice," Plaintiffs agreed to the consolidation. Plaintiffs signed the consolidated note and a personal guaranty in November of 2008.

In 2011, the vice president informed Plaintiffs that Defendant had tried to sell the loans at 50% of the amount owed, but was unable to find a buyer. "[The vice president]

represented to [Plaintiffs] that [Defendant] intended to sell the loans at a discount, but intended to continue to collect the full amount of the loan, thereby reaping profits on the loans." In November of 2011, Plaintiffs met with Defendant "to discuss extending the term of the [consolidated loan] or paying off the [consolidated loan] at a discount." An agent for Defendant agreed to renew the note for another three years and told Plaintiffs to contact a different agent "to discuss potentially paying off the [consolidated loan] for a discount."

Plaintiffs called the different agent and asked for a 50% discount because Defendant had allegedly offered to sell the loans at that rate. The different agent denied having ever made such an attempt and declined to allow Plaintiffs to pay off the loans at a discount. Plaintiffs contacted the original agent about renewing the loan. The original agent failed to express concern or doubts about the process and did not provide a date for completion. "At that point, Plaintiff[s] believed and [were] led to believe[] that Defendant renewed the loan but . . . was working on documents reflecting the renewal." Accordingly, Plaintiffs "understood [that] . . . no payments should be made until the renewal documents were completed."

Defendant told Plaintiffs that it needed to have "'current appraisals' before the loan renewal could be formally documented." Defendant sought to have Plaintiffs pay for an appraisal, and they did. In November of 2011, the original agent informed Plaintiffs that "it was only a matter of time . . ." before the paperwork was completed. In December, the agent "promised that the loan documents would be completed" later that month.

On 27 December 2011, the agent presented Plaintiffs with the renewal documents and "told Plaintiff[s] that [they would have to] pay [approximately] $100,000[] in interest accruing from [the previous month] before [Defendant] would provide any loan extension or renew the loan." The documents were only open for acceptance on that day, and Plaintiffs accused Defendant of "punishing Plaintiffs for delays" by presenting renewal documents that were only valid for one day. The parties did not agree to renewal. The next day Defendant sent Plaintiffs a letter "demand[ing] Plaintiff[s] turn[ ]over rents and threaten[ing] foreclosure . . . ." Defendant also notified the tenants that they were required to pay rent directly to Defendant.

The following month, January of 2012, a third agent for Defendant appraised the value of Property 1 and informed Plaintiffs that Defendant would "release" the property if Plaintiffs could sell it for $1,000,000. This new agent informed Plaintiffs that the rent on the remaining properties would be sufficient to pay off the note in nine years. Defendant sent Plaintiffs a forbearance sheet in February of 2012, which extended the loan through March of 2012. Pursuant to the third agent's statements, Plaintiffs were expecting to receive a nine-year extension.

In March of 2012, Defendant allegedly informed Plaintiffs for the first time "that the terms of the [consolidated note] would not be extended for at least three years and that the interest rate would not be reduced. . . . Plaintiff[s] submitted a loan commitment for $3,000,000 to Defendant . . . and offered [that commitment] to pay off [Defendant] in full."[4] Defendant declined this offer and initiated foreclosure proceedings.

Given these allegations, Plaintiffs asserted causes of action against Defendant for (1) breach of the covenant of good faith and fair dealing, (2) economic duress and coercion, (3) fraud, (4) tortious interference with contract, and (5) unfair

---

[4] The principal owed on the consolidated note is $6,921,994.38.

and deceptive trade practices. Accordingly, Plaintiffs requested relief in the form of an injunction preventing the foreclosure sale, compensatory damages, punitive damages, treble damages, costs, and attorneys' fees. Defendant moved to dismiss Plaintiffs' claims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure on 8 October 2012. In its motion, Defendant asserted that the clerk of court entered an order authorizing the foreclosure sale on 8 August 2012 and denied Plaintiffs' motion for a preliminary injunction. According to Defendant, the foreclosure sale went forward on 14 September 2012, and Plaintiffs' properties were sold that day. The matter was heard on 3 December 2012, and the trial court entered an order granting Defendant's motion on 27 December 2012. Plaintiffs appealed that order on 17 January 2013.

Approximately ten months after the trial court's order, on 23 October 2013, Plaintiffs filed motions for relief under Rule 60(b) of the North Carolina Rules of Civil Procedure and to amend their complaint under Rule 15. Plaintiffs notified this Court of their motions, and we held their appeal in abeyance pending an order by the trial court. *James B. Taylor Family Ltd. P'ship v. Bank of Granite*, No. 13-550 (N.C. Ct. App. 5 December 2013), *available at*

http://appellate.nccourts.org/orders.php?t=&court=2&id=283136&pdf=1&a=0&docket=1&dev=1. Plaintiffs made the following additional allegations in their motions:

The trial court entered a temporary restraining order ("TRO") on 16 August 2012, nine days after Plaintiffs filed their complaint. "Despite the [TRO], the substitute trustee advertised the foreclosure sale . . . ," which was set to occur on 7 September 2012. Plaintiffs sought discovery from Defendants on 22 August 2012, but Defendant did not comply with those requests. On 14 September 2012, Defendant purchased the three properties for less than the amount owed by Plaintiffs and transferred title to three affiliated limited liability companies "without notice to Plaintiffs." During this process, Plaintiffs spoke to the vice president, who was no longer affiliated with Defendant. He informed Plaintiffs that information relating to the loans was located in his files with Defendant.

According to Plaintiffs, Defendant had collected "at least $517,602[] in rent from tenants [on the properties] after August 8, 2012 until the date of [the m]otion." Property 3 was later sold to a third party "for $275,000 more than the 'credit bid' for [that property]."

> 16. On October 16, 2013[ Mr.] Taylor realized that discussions and written correspondence between [Plaintiffs] and [Defendant] in October 2010 through January 2011 evidence that Plaintiffs did not ratify the [c]onsolidated [l]oan . . . and [that Plaintiffs] effectively told [Defendant that they] continued to believe the properties were subject to independent loan value calculations.

In addition, Defendant brought suit against Plaintiffs on 27 September 2013 to recover the deficiency on the consolidated note and for "purported fraudulent conveyances" made by Plaintiffs, but "intentionally withheld service of process on Plaintiffs . . . ."

Plaintiffs' motion was heard on 2 December 2013. Two weeks later, on 16 December 2013, Plaintiffs notified this Court that the trial court intended to deny their motion. The trial court entered its written decision on 18 December 2013, making the following pertinent conclusions:

> 8. There is no newly discovered evidence (not otherwise available to Plaintiffs prior to December 3, 2012) pursuant to Rule 60(b)(2) that is relevant to any issue raised by Plaintiffs' original [c]omplaint.
>
> 9. Additionally, Plaintiffs fail to submit sufficient reasons to justify relief . . . pursuant to Rule 60(b)(1), 60(b)(3), 60(b)(6) or otherwise under Rule 60 of the North Carolina Rules of Civil Procedure.

As a result, the trial court stated that "if there were continuing jurisdiction over [the] matter . . . , it would deny Plaintiffs' Rule 60 [m]otion for [r]elief and would deny as moot Plaintiffs' [m]otion to [a]mend under Rule 15." Following that decision, we issued an order stating that further appeal was unnecessary because "[j]urisdiction remains in this Court." *James B. Taylor Family Ltd. P'ship v. Bank of Granite*, No. 13-550 (N.C. Ct. App. 15 January 2014), *available at* http://appellate.nc courts.org/orders.php?t=&court=2&id=286166&pdf=1&a=0&docket=1&dev=1. Accordingly, we directed the parties to file a supplemental record and supplemental briefs. *Id.* The supplemental record was filed on 4 February 2014. Plaintiffs and Defendant filed their supplemental briefs on 19 February and 3 March 2014, respectively.

*Discussion*

On appeal, Plaintiffs contend that the trial court erred in granting Defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim. Alternatively, Plaintiffs assert that relief from the trial court's order should be awarded pursuant to Rule 60(b). We affirm the trial court's order granting

Defendant's motion to dismiss and decline to grant relief pursuant to Rule 60(b).

*I. Rule 12(b)(6)*

> The motion to dismiss under [Rule] 12(b)(6) tests the legal sufficiency of the complaint. In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted.

*Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citations omitted). "This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *affirmed per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

In their first argument on appeal, Plaintiffs contend that the trial court erred in granting Defendant's motion to dismiss because they properly stated claims for: (1) the following "equitable defenses and equitable claims [for] relief" (a) waiver, (b) modification, (c) ratification, (d) lack of consideration, (e) over-reaching and unfair bargaining, (f) economic duress, (g) fraud and estoppel, and (h) unfair trade practices; (2) breach of the implied covenant of good faith and

fair dealing; (3) economic duress; (4) misrepresentation and fraud; (5) tortious interference with contract; and (6) unfair and deceptive trade practices. Plaintiffs also assert that discovery would reveal any missing elements of their claims and argue that granting the motion without discovery is unfairly prejudicial. We disagree.

> *(1) Waiver, Modification, Ratification, Lack of Consideration, Over-Reaching and Unfair Bargaining, Economic Duress, Fraud and Estoppel, and Unfair Trade Practices*

Plaintiffs assert that their complaint properly stated the "equitable defenses and equitable claims [for] relief" listed above.[5] For support, Plaintiffs cite to various paragraphs in their complaint and argue that "[Defendant's] representations and actions in 2005 and [Defendant] accepting payments for more than 3 years thereafter are sufficient to establish [all of these claims]." Plaintiffs further assert that the consolidated loan "is the result of egregious tortious conduct and cannot be legally enforced" and claim that they "*understood* the parties

---

[5] As noted above, Plaintiffs only explicitly list (1) breach of the covenant of good faith and fair dealing, (2) economic duress and coercion, (3) fraud, (4) tortious interference with contract, and (5) unfair and deceptive trade practices in their complaint. Plaintiffs' argument on appeal indicates that they believe these other causes of action were impliedly stated in the allegations of the complaint.

were operating pursuant to modified loans and a course of dealings developed over many years." (Emphasis added). The only legal authority Plaintiffs provide are quotations regarding the remedies of specific performance and reformation of contracts. This argument lacks merit.

As a preliminary matter, we note that Plaintiffs' first argument consists almost entirely of *listing* the eight different "defenses and claims" that they believe were properly stated in their complaint and citing the paragraphs that they believe support those claims. Plaintiffs offer no *specific* reasons or arguments for these claims and provide no citations in their brief to the relevant legal standards. Indeed, Plaintiffs' claims are not even explicitly included in their complaint. This practice makes it difficult to properly address Plaintiffs' arguments on appeal and treads dangerously close to abandonment. *See* N.C.R. App. P. 28(a); *see also United Leasing Corp. v. Miller*, 45 N.C. App. 400, 403, 263 S.E.2d 313, 316 (1980) ("Questions raised . . . in appeals from trial tribunals but not then presented and discussed in a party's brief are deemed abandoned.") (citations omitted). Nonetheless, we elect to review Plaintiffs' arguments on the merits and conclude that

they have failed to state any of the alleged "defenses and claims" described above.

Waiver is an equitable defense to foreclosure that may be present when the lender accepts late payments on a loan. *See Meehan v. Cable*, 127 N.C. App. 336, 340, 489 S.E.2d 440, 444 (1997) (citations omitted). As Defendant notes in its brief, the paragraphs cited by Plaintiffs as evidence of waiver only apply to the notes on Property 1 and Property 2 from October of 2001. "[S]uch allegations have no bearing on the [consolidated n]ote — the loan which was secured by the properties foreclosed upon by [Defendant]." Indeed, the paragraphs of the complaint relied upon by Plaintiffs specifically state that "[Defendant] refused to accept anything less than the full amount of the . . . [c]onsolidated [n]ote as satisfaction . . . ." There is no allegation that Defendant accepted late payments on the consolidated note. Therefore, Plaintiffs' argument as it pertains to waiver is overruled.

"Modification" is not a stand-alone equitable doctrine. What Plaintiffs appear to mean by the use of this term is that the consolidated note was amended in a manner that prevented foreclosure. However, as Defendant observes, the cited paragraphs of Plaintiffs' complaint fail to reference the

consolidated note, which is the relevant instrument in this case. Therefore, Plaintiffs' argument as it pertains to "modification" is overruled.

"Ratification" refers to the idea that a principal may be held liable for the actions of an individual who lacks authority to act as an agent, but nonetheless "makes a contract as an agent for [the principal]" when the principal, "upon discovery of the facts, . . . ratif[ies] the contract . . . ." *Patterson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 266 N.C. 489, 492, 146 S.E.2d 390, 393 (1966) (citations omitted). Plaintiffs assert that their complaint reveals Defendant ratified the "rent-spread" agreement, *i.e.*, the alleged agreement that Defendant would only accept payments to the extent they were covered by rental payments made to Plaintiffs by their tenants. Again, we note that these allegations refer to the 2001 notes on Properties 1 and 2, *not* the consolidated note. Even assuming those notes were modified and such modification was ratified by Defendant, it is not relevant to Plaintiffs' complaint or this appeal. Therefore, Plaintiffs' argument as it pertains to "ratification" is overruled.

"Lack of consideration" refers to the principle that a contract must be supported by valuable consideration in order to

be enforceable. *See, e.g.*, *Brown v. Ray*, 32 N.C. (10 Ired.) 72, 73 (1849) ("[T]here must be a consideration to support a promise . . . ."). The cited paragraphs of Plaintiffs' complaint describe the process of consolidating the loans on properties 1 and 2, but do not allege that the parties' agreement lacked consideration. In addition, "[i]t is well settled that a loan is sufficient consideration to support the obligation of a promissory note . . . ." *In re Blue Ridge Holdings Ltd. P'ship*, 129 N.C. App. 534, 537-38, 500 S.E.2d 446, 449 (1998) (citation omitted); *see also Smith v. Allison*, 83 N.C. App. 232, 234, 349 S.E.2d 623, 624 (1986) (deeming evidence that the promisee intended to lend the corporation money and that funds were advanced to the corporation sufficient to show the existence of consideration to support promissory notes), *disc. review denied*, 319 N.C. 406, 354 S.E.2d 718 (1987). Therefore, Plaintiffs' argument as it pertains to lack of consideration for the consolidated note is overruled.

"Over-reaching" and "unfair bargaining" are not documented equitable doctrines in North Carolina. As Defendant notes in its brief, however, "Plaintiffs appear to be using these terms as synonyms for their claims of duress and breach of the covenant of good faith and fair dealing." Plaintiffs offer no argument

regarding these particular terms, but to the extent they deal with their other causes of action, those arguments are addressed below.

Similarly, Plaintiffs' remaining "defenses and claims" — economic duress, fraud and estoppel, and unfair trade practices — are synonymous with their named causes of action. Therefore, we address those claims below.

### *(2) Implied Covenant of Good Faith and Fair Dealing*

In their second argument on appeal, Plaintiffs contend that Defendant breached an implied covenant of good faith and fair dealing between the parties because the parties had developed a "'small town' banking relationship," which resulted in additional, unwritten terms to the loans. Specifically, Plaintiffs assert their "belie[f]" that "payments [on the] principal and interest were required only as tenants occupied the properties," citing Defendant's alleged modification of the 2001 notes "from time-to-time to reflect the rental income received." Plaintiffs contend this constitutes a course of dealing, which should have been read into the consolidated loan. This argument is without merit.

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which

injures the right of the other to receive the benefits of the agreement." *Williams v. Craft Dev., LLC*, 199 N.C. App. 500, 506, 682 S.E.2d 719, 723 (2009) (citations and internal quotation marks omitted), *disc. review denied*, 363 N.C. 859, 695 S.E.2d 452 (2010). Plaintiffs' argument conflates the implied covenant of good faith and fair dealing with the parol evidence rule. Whether Defendant breached certain additional, unwritten terms contained in the consolidated loan is relevant to a cause of action for breach of contract, not breach of the implied covenant of good faith and fair dealing. As Plaintiffs do not allege breach of contract in their complaint, this argument is out of place.

Furthermore, Plaintiffs' complaint fails to properly allege facts evidencing a breach of the covenant of good faith and fair dealing.[6] Plaintiffs assert that Defendant breached the covenant by (1) failing to sell the loans to Plaintiffs at the 50% discount that Defendant allegedly offered to other would-be purchasers and (2) "collecting rents and withholding material information about the properties (including . . . appraisals)

---

[6] Plaintiffs' complaint also alleges "lack of consideration" for the consolidated note as a part of their claim for breach of the implied covenant of good faith and fair dealing. As we explained in the preceding section, that argument is without merit.

thereby hindering Plaintiffs['] ability to find . . . alternatives." Defendant was under no contractual obligation, however, to offer Plaintiffs a 50% discount. Such a right would directly contradict the terms of the consolidated note, which requires Plaintiffs to pay the loan in full. In addition, Defendant had the right to collect rents pursuant to the parties' agreement in the deed of trust, and Plaintiffs had no contractual or legal right to the appraisals. *See, e.g.*, *Camp v. Leonard*, 133 N.C. App. 554, 559, 515 S.E.2d 909, 913 (1999) ("Other courts have . . . held the relationship between borrower and lender is not a confidential one. Unless a further obligation is assumed by the lender, its inspection of the premises to be mortgaged is made only to determine whether the property has sufficient value to secure the loan[] and is for the benefit of the lender only.") (citations omitted). Accordingly, Plaintiffs' second argument is overruled.

*(3) Economic Duress*

Plaintiffs also assert that Defendant fraudulently "created the circumstances" that led to economic duress and then "used the economic distress[7] to force and coerce Plaintiffs to sign the [consolidated n]ote" and personal guaranty in 2008. On appeal,

---

[7] Plaintiffs do not distinguish between "duress" and "distress."

Plaintiffs argue that their only source of income at this time was "rent received from the properties" and allege that they were "prevented from finding alternative[ financing] because of [Defendant's] fraud and refusal to provide appraisals." These allegations do not state a valid claim of duress.

> Duress exists where one, by the unlawful act of another, is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise of free will. A wrongful act or threat is an important element of duress. The act threatened is wrongful if made with the corrupt intent to coerce a transaction grossly unfair to the victim and not related to the subject of such proceedings. . . .

*Radford v. Keith*, 160 N.C. App. 41, 43-44, 584 S.E.2d 815, 818 (2003). Furthermore,

> [a] mere assertion of a grievance is insufficient to state a claim upon which relief can be granted [under Rule 12(b)(6)]. Some degree of factual particularity is required. The statement of a claim for relief must satisfy the requirements of the substantive law which give[s] rise to the pleadings. A complaint, to state a claim for relief, must [therefore] refer to "the transactions, occurrences, or series of transactions or occurrences[] intended to be proved" [as articulated in Rule 8(a) of the North Carolina Rules of Civil Procedure].

*Alamance Cnty v. N.C. Dep't of Human Res.*, 58 N.C. App. 748, 750, 294 S.E.2d 377, 378 (1982) (citations and certain internal quotation marks omitted) (holding that the plaintiff failed to

state a claim of fraud for which relief could be granted when its complaint made only "conclusory allegations of grievances and offer[ed] no indication of the existence of facts which, if proven, would permit a finding of fraud . . ."); *see also Biddix v. Henredon Furniture Indus.*, 76 N.C. App. 30, 33, 331 S.E.2d 717, 720 (1985) ("Plaintiff's complaint, therefore, must give sufficient notice of the events on which he bases his claim[] and *state sufficient facts* to satisfy the substantive elements of a legally recognized claim [to avoid dismissal under Rule 12(b)(6)].") (emphasis added).

In this case, Plaintiffs' complaint does not allege any *particular* transactions, occurrences, or series of transactions or occurrences invoking the elements of duress. Rather, Plaintiffs assert that Defendant "used economic duress" to force Plaintiffs' compliance with the contract. On appeal, Plaintiffs offer little clarification, only noting that they had few financial resources at the time they agreed to the consolidation loan and attributing this fact to Defendant's undefined "fraud." These "merely conclusory" allegations "offer[] no indication of the existence of facts which, if proven, would permit a finding" of duress. *See Alamance Cnty*, 58 N.C. App. at 750, 294 S.E.2d at

378. Accordingly, Plaintiffs' argument as it pertains to duress is overruled.

*(4) Misrepresentation and Fraud*

Plaintiffs next allege that "Defendant's representations, acts[,] and omissions[,] both in 2008 and again in November 2011 through December 2011, amount to fraud . . . ." Plaintiffs assert that this fraud "induced [them] to enter [into] the [consolidated note]," was "intended to cause [them] to breach the [consolidated note]," caused them to rely on Defendant's promises, and was "intentional and wanton." These allegations do not amount to a valid claim of fraud.

> The elements of a civil cause of action for fraud are (1) a false representation or concealment of a material fact (2) that is reasonably calculated to deceive (3) made with intent to deceive (4) which does in fact deceive and (5) results in damage to the injured party. [For an action in fraud] to survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must allege with particularity all material facts and circumstances constituting the fraud, although intent and knowledge may be averred generally. Thus, there is a requirement of specificity as to the element of a representation made by the alleged defrauder: The representation must be definite and specific.

*Charlotte Motor Speedway, LLC v. Cnty of Cabarrus*, __ N.C. App. __, __, 748 S.E.2d 171, 178 (2013) (citations and internal

quotation marks omitted) (holding that the trial court correctly dismissed the plaintiff's fraud claim under Rule 12(b)(6) when the complaint alleged that the defendant "made false representation of material fact[,] . . . concealed material facts regarding [the] ability to fund . . . promised amounts [of money]," and based those allegations on a letter that did not provide any "definite and specific" timeframe), *disc. review allowed*, __ N.C. __, 753 S.E.2d 664 (2014).

Plaintiffs' complaint is entirely devoid of particularity as it relates to the claim of fraud. Plaintiffs merely allege in sweeping terms that Defendant committed fraud and employed "fraudulent representations" to induce them to sign the note. As with Plaintiffs' claim of economic duress and similar to the claims from our opinion in *Charlotte Motor Speedway*, these allegations are not sufficiently "definite and specific" to support a claim of fraud. Accordingly, Plaintiffs' argument is overruled as it relates to fraud.

*(5) Tortious Interference with Contract*

Plaintiffs allege that Defendant tortiously interfered with contracts between Plaintiffs and their tenants by collecting rent from the tenants pursuant to the terms of the consolidated note. Even assuming the truth of these allegations, they are not

sufficient to state a claim of tortious interference with contact.

> To establish a claim for tortious interference with contract, a plaintiff must show:
>
> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to [the] plaintiff.
>
> Interference is without justification if a defendant's motive is not reasonably related to the protection of a legitimate business interest.
>
> Whether an actor's conduct is justified depends upon the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor, and the contractual interests of the other party. . . .
>
> A complaint must show that the defendant acted with malice and for a reason not reasonably related to the protection of a legitimate business interest of the defendant party.

*Sellers v. Morton*, 191 N.C. App. 75, 81–82, 661 S.E.2d 915, 921 (2008) (citations, internal quotation marks, and brackets omitted). If the complaint admits a motive for the interference

other than malice, it must be dismissed. *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674-75, 541 S.E.2d 733, 738 (2001) (affirming the trial court's dismissal of the plaintiff's complaint as it related to tortious interference with contract under Rule 12(b)(6) because the complaint only alleged that the defendant "lacked justification" for its acts, not that it acted maliciously) (citations omitted).

In this case, Plaintiffs' complaint states that Defendant "incorrectly and unlawfully relie[d] on terms [in the consolidated note] which were caused by fraud, economic duress[,] and unfair trade practices." Plaintiffs offer no allegation that Defendant acted maliciously. Though Plaintiffs assert that the consolidated note is an unlawful contract, they admit that Defendant was acting pursuant to the terms of the consolidated note. Indeed, Plaintiffs' complaint includes a copy of a letter from Defendant, which states its intention to collect the rents "to secure [Plaintiffs'] obligations to [Defendant] with respect to [the loan]." This indicates that Defendant was acting in reasonable protection of its legitimate business interests and not out of malice. Accordingly, Plaintiffs have failed to state a claim of tortious interference

with contract for which relief may be granted, and their argument is overruled as it pertains to that claim.

*(6) Unfair and Deceptive Trade Practices*

Plaintiffs allege that Defendant engaged in unfair and deceptive trade practices by "demanding" immediate payment on all three loans in September of 2008, before the loans were consolidated, even though the loans were not in default. Plaintiffs also characterize Defendant's behavior as an "intentional breach of contracts accompanied [by] aggravating circumstances" and further allege that Defendant made different representations regarding the interest rate charged on the loans, but "actually charged interest" at the higher rates. These allegations do not state a valid claim of unfair and deceptive trade practices.

> To establish a claim for unfair and deceptive trade practices, [the complaining party] must show: (1) that [the responding party] committed an unfair or deceptive act or practice, (2) [that] the action in question was in or affecting commerce, and (3) [that] the act proximately caused injury to [the complainant]. An act or practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to [customers]. An act or practice is deceptive if it has the capacity or tendency to deceive.
>
> . . . .

> A mere breach of contract, even if intentional, is not an unfair or deceptive act . . . . It is well recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action . . . . To recover for unfair and deceptive trade practices, a party must show substantial aggravating circumstances attending the breach of contract. . . .

*Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 41–42, 626 S.E.2d 315, 322–23 (citations, internal quotation marks, and certain ellipses omitted), *disc. review denied*, 360 N.C. 531, 633 S.E.2d 674 (2006).

On appeal, Plaintiffs argue that "[t]he allegations show that [Defendant] used [its] inequitable position and power, combined with [its] knowledge of Plaintiffs' financial condition, to cause Plaintiffs to sign a [p]romissory [n]ote in violation of the law." For support, Plaintiffs cite three cases as examples of similar conduct: *Wilder v. Squires*, 68 N.C. App. 310, 315 S.E.2d 63, *disc. rev. denied*, 311 N.C. 769, 321 S.E.2d 158 (1984) (affirming the trial court's award of damages for unfair and deceptive trade practices by a vendor against a prospective purchaser when the vendor threatened the purchaser with loss of his deposit if the purchaser would not accept the financing scheme offered by the vendor); *Pedwell v. First Union*

*Nat'l Bank of N.C.*, 51 N.C. App. 236, 275 S.E.2d 565 (1981) (reversing the trial court's dismissal of the plaintiffs' complaint of unfair and deceptive trade practices by the defendant financial services provider when the plaintiffs alleged that the services "conspired to keep [them] from purchasing [a] condominium by . . . refus[ing] . . . a loan when it was too late for [the plaintiffs] to obtain alternate financing," *i.e.*, six days before closing on the purchase); and *Fallston Finishing, Inc. v. First Union Nat'l Bank*, 76 N.C. App. 347, 333 S.E.2d 321 (concluding that evidence of a breach or threat of breach of loan commitments by the defendant bank and of great financial hardship faced by the plaintiff corporations raised a jury issue as to whether an accord and satisfaction occurred), *cert. denied*, 314 N.C. 664, 336 S.E.2d 621 (1985). We are unpersuaded.

First, the mere act of "demanding" that a borrower consolidate its loans is neither immoral, unethical, oppressive, unscrupulous, substantially injurious, or deceptive. *Cf. Shell Trademark Mgmt. BV & Motiva Enters. v. Ray Thomas Petroleum Co.*, 642 F. Supp. 2d 493 (2009) ("It was neither unfair nor deceptive for Motiva to insist that RTP pay out their contract rather than substitute another gas station for the gas station which

closed."). To the extent there is a power differential between the parties, that difference is an organic element of the lender/borrower relationship. It is not grounds to support a claim of unfair and deceptive trade practices. Plaintiffs do not allege that Defendant made deceptive statements, used its authority to *coerce* or *force* Plaintiffs to agree to consolidate, or otherwise acted inappropriately in its demand for payment. Whether the loan payments were in default or not, the facts alleged in the complaint reveal that Defendant gave Plaintiffs a full six weeks to decide how to handle the situation. This is sufficient time to evaluate Defendant's "demand," consult a lawyer, if necessary, and respond appropriately. The validity of Defendant's demand, alone, does not establish a claim of unfair and deceptive trade practices. Even assuming that Defendant breached a contract with Plaintiffs, Plaintiffs simply do not allege facts showing the existence of other aggravating factors that might transform Plaintiffs' claims from mere grievances to colorable causes of action.

Second, the cases cited by Plaintiffs are not applicable here. In *Wilder*, the defendant threatened the plaintiff with the loss of a substantial monetary deposit if he did not agree to the defendant's terms. 68 N.C. App. at 315, 315 S.E.2d at 66.

Plaintiffs allege no such threat here. In *Pedwell*, the plaintiffs alleged that the defendant financial services provider conspired to refuse a necessary loan with only six days remaining before closing on certain property. 51 N.C. App. at 237, 275 S.E.2d at 566. Here, unlike the financial services provider in *Pedwell*, Defendant gave Plaintiffs notice of its demand *a full six weeks before* payment was expected. As discussed above, this was a sufficient amount of time to allow Plaintiffs to collect themselves and respond appropriately. Additionally, *Fallston Financing, Inc.* involves economic duress, not unfair and deceptive trade practices. 76 N.C. App. at 364, 333 S.E.2d at 331. Therefore, it is not applicable in this case.

Lastly, Plaintiffs' allegations that Defendant explained its interest rate on the loans using different values and eventually charged Plaintiffs at the higher value is not sufficient, alone, to establish a claim of unfair and deceptive practices. Even assuming that Defendant communicated two different methods of calculating the interest on the loans to Plaintiffs, the plain language of the consolidated note indicates that "[i]nterest will be calculated on a[n] [a]ctual/360 basis." The fact that Defendant described two different ways of calculating such rate before the loans were

consolidated does not have an appreciable effect on the marketplace and does not amount to unfair and deceptive trade practices. *See Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009) ("The 'relevant gauge' of an act's unfairness or deception is the effect of the actor's conduct on the marketplace.") (citation, certain internal quotation marks, and brackets omitted). Accordingly, Plaintiffs' argument as it pertains to its claim of unfair and deceptive trade practices is overruled.

*(7) Discovery*

In the alternative, Plaintiffs argue that any "technical discrepancy" in their pleadings could be remedied by discovery. Therefore, Plaintiffs assert that it would be "unfairly prejudicial" to allow dismissal of their case without giving them the opportunity to review the "vast majority of the evidence relating to the[ir] claims" that is in Defendant's control. We disagree. "While absolute precision in pleading is not necessary, [the] plaintiffs may not simply state a generalized grievance and thereby gain the right to go on a discovery fishing expedition." *Smith v. City of Charlotte*, 79 N.C. App. 517, 529-30, 339 S.E.2d 844, 852 (1986). Plaintiffs' argument is therefore overruled. Accordingly, we affirm the

trial court's order granting Defendant's motion to dismiss Plaintiffs' complaint under Rule 12(b)(6) for failure to state any claim upon which relief may be granted.

*II. Rule 60(b)*

Alternative to their argument that the trial court erred in granting Defendant's motion to dismiss their complaint, Plaintiffs argue that relief is proper pursuant to Rule 60(b), subsections (1)-(3) and (6), and that they should be allowed to amend their complaint pursuant to Rule 15. We agree with the trial court's decision that, if it had jurisdiction over the matter, Plaintiffs' Rule 60(b) motion should be denied and do so here.

*(1) Any Reason Justifying Relief*

Under Rule 60(b)(6), the court may grant relief from a judgment for any reason "justifying relief." N.C.R. Civ. P. 60(b)(6).

> The grounds for setting aside judgment pursuant to Rule 60(b)(6) are equitable in nature. What constitutes cause to set aside judgment pursuant to Rule 60(b)(6) is determined by whether (1) extraordinary circumstances exist; and (2) whether the action is necessary to accomplish justice.

*Trivette v. Trivette*, 162 N.C. App. 55, 63, 590 S.E.2d 298, 304 (2004) (citations omitted). This is a two-pronged test. *See id.*

Plaintiffs argue that relief is proper under Rule 60(b)(6) because the circumstances surrounding their case have changed so substantially that justice demands relief. Plaintiffs describe those circumstances as follows: First, Defendant filed a deficiency action against Plaintiffs. Second, Defendant failed to disclose material facts before the 12(b)(6) hearing which "support prejudicial irregularity in the foreclosure proceedings." Third, the consideration paid for Property 3 was grossly inadequate. Fourth, Defendant has neither answered the allegations in Plaintiffs' complaint nor allowed discovery, and the trial court erred in refusing to allow Plaintiffs to offer evidence at the 2 December 2013 hearing on their motion for 60(b) relief. Fifth, the decisions of the clerk of court in the foreclosure action should not be given preclusive effect in the deficiency action. We are unpersuaded.

*(a) The Deficiency Action*

Plaintiffs do not provide a clear reason for why the act of filing a deficiency action constitutes an extraordinary circumstance justifying relief from the trial court's order. Instead, Plaintiffs cite an opinion of this Court in *Sloan v.*

*Sloan*, 151 N.C. App. 399, 566 S.E.2d 97 (2002). Plaintiffs also assert that Defendant wrongly failed to reveal the following facts in its deficiency action: Defendant's continued receipt of rents from tenants, the transfer of property to the affiliated corporations, the sale of Property 3 for substantial profit, and its intention to pursue the deficiency action.[8]

We need not address the merits of Plaintiffs' argument as it pertains to the deficiency action or the application of our opinion in *Sloan*. Even if Defendant erred in failing to reveal certain facts in its deficiency action, the act of filing such an action is not an extraordinary circumstance justifying relief. The proper action for Plaintiffs to pursue in the event that a deficiency action is inappropriate is not relief pursuant to Rule 60(b), but a motion to dismiss. *See generally* N.C.R. Civ. P. 12. Therefore, Plaintiffs' argument as it relates to the deficiency action is overruled.

(b) *"Prejudicial Irregularities" at Foreclosure*

Plaintiffs also assert that extraordinary circumstances were present justifying relief from the trial court's judgment

---

[8] Plaintiffs do not specify why they believe Defendant should have notified them of its intention to pursue the deficiency action *in that same action*. Obviously, such notification would have little value once the action was filed.

because Defendant failed to disclose certain material facts relating to "prejudicial irregularit[ies]" in the foreclosure proceedings. Specifically, Plaintiffs assert that Defendant incorrectly failed to disclose: the issuance of an "excessive" 6.8 million dollar bond to stay the foreclosure sale and allow appeal, the use of "*en masse*" advertising by Defendant to inform potential buyers about the foreclosure sale, and the act of advertising the sale during the TRO. We again disagree.

These facts are not relevant to the causes of action Plaintiffs allege in their complaint. To the extent that Defendant's failure to reveal certain facts relating to the foreclosure proceedings was improper, it does not justify relief from the trial court's grant of Defendant's motion to dismiss under Rule 12(b)(6). Accordingly, Plaintiffs' argument is overruled as it relates to these so-called irregularities.

*(c) "Grossly Inadequate" Consideration*

Lastly, Plaintiffs assert that extraordinary circumstances sufficient to justify relief from the trial court's order on Defendant's motion to dismiss are present in the form of "grossly inadequate" consideration paid for Property 3 in May of 2013, *i.e.*, consideration amounting to a $275,000 profit for

Defendant. For the reasons discussed in the preceding section, this argument is without merit.

> (d) *Discovery, Plaintiffs' Allegations, and Plaintiffs' Evidence*

Plaintiffs next argue that extraordinary circumstances justifying relief are present in this case because Defendant failed to answer the allegations in Plaintiffs' complaint or allow discovery and because the trial court refused to allow Plaintiffs to present evidence regarding the validity of the consolidated note and their inability to pay the 6.8 million dollar security bond. We are unpersuaded.

The rule of civil procedure requiring a defendant to file counterclaims in a responsive pleading, N.C.R. Civ. P. 13(a), is not applicable when a defendant files a motion to dismiss instead of a pleading. *Cf. Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 795 (1993) ("[Federal Rule 13(a)] does not come into play when a defendant files only a motion to dismiss, instead of a pleading."); *see generally Hardin v. York Mem'l Park*, __ N.C. App. __, __, 730 S.E.2d 768, 773 (2012) ("For purposes of [Rule 15(a)], a Rule 12(b)(6) motion to dismiss is not a responsive pleading and thus does not itself terminate [the] plaintiff's unconditional right to amend a complaint under Rule 15(a).") (citation and internal quotation marks omitted), *disc. review*

*denied*, 366 N.C. 571, 738 S.E.2d 376 (2013). Therefore, Defendant's failure to answer Plaintiffs' allegations is not an extraordinary circumstance justifying relief.

In addition, for the reasons discussed in section *I(7)* of this opinion, *supra*, Defendant's failure to allow discovery does not constitute an extraordinary circumstance justifying relief.

Lastly, Plaintiffs allege that the trial court erred in refusing to allow them to present evidence "which (1) supports invalidating the 'consolidated note' and (2) . . . [proves] Plaintiffs could not obtain a []6.8 [m]illion [d]ollar security bond necessary to challenge the [c]lerk's findings." Plaintiffs do not describe this evidence, but cite to a portion of the transcript of the 2 December 2013 hearing in which counsel for Plaintiffs — discussing Defendant's deficiency action — states the following:

> So, with that being said, Your Honor, again, I don't want to — I want to preserve my right to offer into evidence Mr. Taylor's testimony to the extent it's necessary to preserve our right in the [N.C. Gen. Stat. § 45-21.16] hearing to insure that there is no claim for preclusive effect. But I think that I'm hearing the other side acknowledge, and I think Your Honor, from the bench stated earlier that we travelled on separate tracks, that that's not the intent of that [N.C. Gen. Stat. § 45-21.16] hearing or the appeal there[]from to preclude us from entering evidence. And with that being said

> I'd leave it to Your Honor. If Your Honor
> would like me — in order to preserve that
> right I'd be glad to bring Mr. Taylor to the
> bench.

The trial court responded by saying: "At this point and time and [sic] I don't believe the testimony is appropriate or necessary."[9]

This testimony relates to the deficiency action, not Plaintiffs' Rule 60 motion for relief. Thus, it is not relevant to Plaintiffs' argument that extraordinary circumstances are present to justify relief under Rule 60(b). Accordingly, Plaintiffs' argument as it relates to this testimony is overruled.

### (e) Claim Preclusion, Res Judicata, and Judicial Estoppel

Next, Plaintiffs argue that they would "potential[ly]" be unfairly prejudiced by applying the clerk of court's findings in the foreclosure proceedings to Defendant's deficiency case and,

---

[9] Plaintiffs' use of the word "refused" to describe the trial court's action is inaccurate. The testimony quoted above indicates that Plaintiffs were content to refrain from introducing the testimony as long as they could preserve their right to use it in the hearing on Defendant's deficiency action.

therefore, that *res judicata* and judicial estoppel should not apply. As discussed at length above, this argument is entirely unrelated to Plaintiffs' Rule 60(b) motion for relief, despite its placement in the "extraordinary circumstances" section of Plaintiffs' brief. Accordingly, we decline to review it here. If Plaintiffs wish to litigate the validity of the *foreclosure proceedings*, to the extent those issues are not moot, they should do so in a separate action.

### *(f) Justice*

Finally, Plaintiffs assert that justice demands relief from the trial court's order. Because we have not found any extraordinary circumstances justifying relief in this case, we need not address this argument. *See Huggins v. Hallmark Enters.*, 84 N.C. App. 15, 25, 351 S.E.2d 779, 785 (1987) ("Th[e test for relief under Rule 60(b)(6)] is two-pronged, and relief should be forthcoming only where both requisites exist."). Accordingly, Plaintiffs' argument for relief under Rule 60(b)(6) is overruled.

### *(2) Excusable Neglect*

Rule 60(b)(1) provides that the trial court may grant relief to a party from a final order for "[m]istake,

inadvertence, surprise, or excusable neglect." N.C.R. Civ. P. 60(b)(1).

> To set aside a judgment on the grounds of excusable neglect under Rule 60(b), the moving party must show that the judgment rendered against him was due to his excusable neglect and that he has a meritorious defense. . . .
>
> . . . .
>
> The issue of what constitutes excusable neglect is a question of law which is fully reviewable on appeal. While there is no clear dividing line as to what falls within the confines of excusable neglect . . . , [it] depends upon what, under all the surrounding circumstances, may be reasonably expected of a party in paying proper attention to his case.
>
> Thus, . . . deliberate or willful conduct cannot constitute excusable neglect, nor does inadvertent conduct that does not demonstrate diligence.
>
> And, clearly, an attorney's negligence in handling a case should not be grounds for relief under the excusable neglect provision of Rule 60(b)(1).

*Monaghan v. Schilling*, 197 N.C. App. 578, 584, 677 S.E.2d 562, 566 (2009) (citations, internal quotation marks, and certain ellipses omitted).

In arguing that they are entitled to relief for excusable neglect, Plaintiffs repeat their previous arguments in a new context. Specifically, Plaintiffs assert that they delayed

amending their complaint to reflect claims of grossly inadequate consideration because they lacked access to the appraisals and were unable to pay the 6.8 million dollar bond. Plaintiffs also characterize their delay as excusable neglect because they were unaware (1) that Defendant would pursue the deficiency judgment and (2) of certain communications made by Defendant regarding the defense of ratification. Finally, Plaintiffs assert that they were unaware of certain details regarding the foreclosure proceedings and that this should be considered excusable neglect sufficient to justify relief. We disagree.

To the extent Plaintiffs' alleged neglect might have otherwise allowed them to establish some meritorious defense to dismissal,[10] such neglect suggests that Plaintiffs were not paying proper attention to their case. The foreclosure sale occurred on 14 September 2012, giving Plaintiffs ample time to determine whether the properties were sold for adequate consideration at that sale. In addition, Defendant had no obligation to inform Plaintiffs that it was planning to pursue a deficiency judgment. Plaintiffs' lack of knowledge that Defendant intended to bring a deficiency action does not

---

[10] We do not opine that it does. Indeed, as noted above, Plaintiffs had no right to access the appraisals.

"excuse" anything related to their 12(b)(6) claim. Lastly, Plaintiffs' alleged *misunderstanding* about the nature of Defendant's communications on the issue of ratification is more akin to carelessness than excusable neglect. Accordingly, the trial court did not err by indicating that it would deny Plaintiffs' motion, and Plaintiffs' argument as it pertains to Rule 60(b)(1) is overruled.

*(3) Newly Discovered Evidence*

Rule 60(b)(2) provides that the trial court may relieve a party from a final judgment on a showing of "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." N.C.R. Civ. P. 60(b)(2).

> To constitute "newly discovered evidence" within the meaning of Rule 60(b)(2), the evidence must be such that it could not have been obtained in time for the original proceeding through the exercise of due diligence. The "newly discovered evidence" must have been in existence at the time of the trial. This limitation on newly discovered evidence has been justified on the firm policy ground that, if the situation were otherwise, litigation would never come to an end.

*Parks v. Green*, 153 N.C. App. 405, 412, 571 S.E.2d 14, 19 (2002) (citations, certain internal quotation marks, and brackets omitted).

On appeal, Plaintiffs characterize the following facts as newly discovered evidence justifying relief from the trial court's order: (1) the market value of the properties, which was not discoverable by the time of the 12(b)(6) hearing because Defendant refused to provide appraisals; (2) the fact that Defendant transferred the properties to the affiliated corporations, which was not discoverable by the time of the 12(b)(6) hearing because Defendant did not reveal this information; and (3) the fact that the May 2013 sale of Property 3 "yielded a substantial profit of at least $275,000[]," knowledge of which "was not possible at the 12(b)(6) hearing as the events had not yet occurred." We are unpersuaded

First, the market value of the properties does not constitute newly discovered evidence justifying relief. Plaintiffs were the owners of the properties for a number of years and entirely capable — prior to the foreclosure sale — of determining the market value of the property. In addition, we have already determined that Plaintiffs' had no right to access the appraisals. Accordingly, this argument is overruled.

Second, Plaintiffs do not provide any cogent argument explaining why Defendant's decision to transfer the properties to the affiliated corporations has any bearing on their

complaint, and we are unable to discern any such reason. Therefore, Plaintiffs' argument as it pertains to Defendant's decision to transfer the properties to the affiliated corporations is overruled.

Third, Plaintiffs' argument is defeated by its own words. As noted above, newly discovered evidence sufficient to justify relief must have been in existence at the time of the relevant legal proceeding. *See id.* Plaintiffs state that the sale of Property 3 occurred *after* the 3 December 2012 hearing on Defendant's motion to dismiss, in May of 2013. Therefore, the profit resulting from the sale cannot constitute newly discovered evidence justifying relief because the sale had not occurred at the time of the 12(b)(6) hearing. As Plaintiffs could not have discovered it on 3 December 2012, it cannot now be "newly discovered." Therefore, Plaintiffs' argument is overruled.

### (4) Fraud, Misrepresentation, or Misconduct

Rule 60(b)(3) provides that a trial court may award relief from an order because of fraud, misrepresentation, or misconduct by the nonmoving party. N.C.R. Civ. P. 60(b)(3). Plaintiffs allege on appeal that Defendant's "refusals" to answer the allegations in the complaint, answer the counterclaims in the

deficiency action, or respond to Plaintiffs' discovery requests constitute intrinsic fraud justifying relief.

As discussed above, Defendant's decisions not to respond to the allegations made by Plaintiffs or allow discovery were appropriate. Even if those decisions were somehow inappropriate, however, they would not constitute fraud under any definition of the term. Therefore, Plaintiffs' final argument is overruled.

*Conclusion*

For the reasons stated above, the trial court's decision indicating it would be inclined to deny Plaintiffs' motion for relief pursuant to Rule 60(b) is correct, and the trial court's order granting Defendant's motion to dismiss under Rule 12(b)(6) is

AFFIRMED.

Judges CALABRIA and ELMORE concur.

Report per Rule 30(e).