JAMES COLLINS WILDER v. J. RALPH SQUIRES AND VIVIAN HAWKINS

No. 8226SC1099

(Filed 15 May 1984)

1. **Unfair Competition § 1— attempted sale of home—failure to return binder without signing release—unfair trade practice**

The trial court properly failed to grant defendant's motions for directed verdict in an action for unfair and deceptive acts or practices in the attempted sale of a house where the evidence tended to show that when plaintiff was unable to obtain financing through conventional means after signing a binder on a home, defendant Squires repeatedly told plaintiff that Squires was entitled to damages and that plaintiff would not get any of the binder back unless he agreed to Squires' terms (leaving $2,460 with Squires), and that plaintiff acquiesced and signed the release. This threatening conduct and the fact that defendant was actively engaged in real estate business was sufficient to constitute a violation of G.S. 75-1.1.

2. **Unfair Competition § 1— unfair trade practices—jury issues—proper**

An issue submitted to the jury which stated "did the defendant, J. Ralph Squires, cause $2,460 of the funds held in escrow to be paid to him without consent of the plaintiff?" adequately supported the theory of coercion which was the theory which plaintiff relied upon to prove unfair acts or practices.

3. **Unfair Competition §1— unfair or deceptive trade practices—findings of fact by court supported by issues submitted to jury**

In an action for unfair or deceptive acts or practices, the issues submitted to the jury supported the trial court's findings of fact and conclusions of law, and the trial judge properly documented the matters that led him to conclude and decide as a matter of law that defendant committed an unfair act or practice pursuant to G.S. 75-1.1.

4. **Unfair Competition § 1— unfair act or practice—attorneys' fees properly awarded**

In an action for an unfair act or practice, the trial court properly awarded attorneys' fees to plaintiff pursuant to G.S. 75-16.1.

APPEAL by defendant Squires from *Sitton, Judge.* Judgment entered 24 May 1982 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 2 September 1983.

*Parham, Helms & Kellam, by James H. Morton, for defendant appellant.*

*Byrum, Byrum & Burris, by Robert N. Burris, for plaintiff appellee.*

BECTON, Judge.

Defendant appeals from a judgment awarding plaintiff treble damages and attorneys' fees based on defendant's unfair and deceptive acts or practices in the attempted sale of a house. We affirm.

On 26 June 1979, plaintiff, James Collins Wilder, negotiated through Realty World, a realtor, to purchase a house from defendant, J. Ralph Squires. The parties did not have any direct communication. Wilder signed a Realty World purchase agreement, which listed the total purchase price as $77,250.00. Under the terms of the agreement, Wilder deposited a $7,250.00 "[b]inder and part payment to be held in escrow by Realty World. . . ." Wilder was to seek financing by a "conventional loan at current rate" for $61,800. One condition of the agreement was:

> [T]he Purchaser will in good faith do all things necessary to procure said loan, and will cooperate to the fullest in obtaining such loan, if the loan cannot be obtained the binder will be returned. The binder will not be returned if the Purchaser takes any action that will prevent the loan being obtained.

The agreement stipulated that if Wilder defaulted in the performance of any of the conditions of the agreement, the $7,250 would be "retained by, and become the property of Realty World. . . ."

Realty World recommended that Wilder obtain financing at First Federal Savings and Loan Association. A loan officer at First Federal refused Wilder's $61,800 loan request because Wilder's income was insufficient. "[W]ith the salary he gave me that he was presently making and the loan amount he was seeking, he was way out of line to qualify for the loan. . . ." Wilder, a sales representative for a manufacturing company, had an annual income of $14,300 in 1979. Wilder did not attempt to obtain financing elsewhere. He notified Realty World that he had not qualified for the loan and, therefore, no longer wished to purchase the house.

Squires discovered through co-defendant, Hawkins, the real estate broker who had listed the house for him, that Wilder had not qualified for the loan. He tried to reach Wilder several times "to find out what he wanted to do." Finally, Squires hand-delivered a letter to Wilder on 29 July 1979. The letter stated

that Squires had "made arrangements for [Wilder] to obtain financing as provided in the contract . . ." and urged Wilder to contact Squires at his home or office "at his earliest convenience in order that we may obtain this financing and close this transaction. . . ."

The following day, 30 July 1979, Wilder met with Squires at Squires' office. Squires is the president and major stockholder of Ralph Squires Homes, one of the largest companies in Charlotte in the business of building and selling new homes. In addition, Squires and his wife buy and sell real estate separate and apart from Ralph Squires Homes. Squires told Wilder that he would guarantee Wilder's loan. The evidence is conflicting at this point. Wilder testified that he asked that his binder be returned. Squires testified that Wilder wanted "to negotiate or work something out." Wilder testified that Squires threatened not to return any of the $7,250 "unless [Wilder] went ahead and went along with what he wanted to do." According to Wilder, Squires talked about charging Wilder a percentage rate for the costs of keeping his house off the market. Squires admitted telling Wilder "according to the laws and rules of real estate, Mrs. Hawkins is entitled to a full commission because I'm willing to finance the house for you." The parties did not reach a consensus. Wilder and Squires arranged to meet that afternoon at Realty World. In the meantime, Squires had an attorney draft a release which provided in part:

> For and in consideration of the sum of two thousand four hundred sixty dollars ($2,460.00) paid by James Collins Wilder, the undersigned, does hereby agree that the contract attached hereto by and between Ralph Squires and James Collins Wilder is hereby declared null and void and of no other force and effect.

At the afternoon meeting, Squires, according to Wilder, again told Wilder that "[he] would not get any of [the binder] back if [he] did not go ahead and sign the agreement." Wilder signed the release; Realty World distributed the $7,250.00 binder by checks among Wilder, Squires and Hawkins.

On 8 November 1979 Wilder filed an action against Squires and Hawkins to recover the portion of the binder withheld. Wilder's complaint alleged coercion, fraud and unfair trade practices

in violation of N.C. Gen. Stat. § 75-1.1 (1981). At the close of Wilder's evidence, the trial court dismissed the action as to Hawkins under the provisions of Rule 50 of the North Carolina Rules of Civil Procedure. The trial court concluded that Squires' coercive conduct constituted an unfair and deceptive trade practice, after submitting the factual questions to the jury. Squires appeals.

I

[1] Squires first contends that the trial court should have granted his motions for directed verdict because "[t]here was insufficient evidence of any conduct on the part of the defendant which would support a finding of fact or conclusion of law that such conduct of the defendant constituted an unfair or deceptive act or practice in or affecting commerce" in violation of G.S. § 75-1.1.[1]

A motion for directed verdict raises the question whether evidence, viewed in the light most favorable to the non-movant, is sufficient to go to the jury. *Rappaport v. Days Inn of America, Inc.*, 296 N.C. 382, 250 S.E. 2d 245 (1979).

A. "In or Affecting Commerce"

To come within the scope of G.S. § 75-1.1, the unfair or deceptive act or practice must be "in or affecting commerce." *See Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980). Commerce, as defined in G.S. § 75-1.1(b), "includes all business activities, however denominated. . . ." In his Answer, Squires admitted that he was "involved in business activities relating to the buying and selling of residential real estate in and around Mecklenburg County, North Carolina." However, on appeal, Squires seeks to classify the attempted sale of this particular house as a non-business activity, because the house had

---

1. N.C. Gen. Stat. § 75-1.1. Methods of competition, acts and practices regulated; legislative policy.

  (a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

  (b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

been purchased with the funds from the sale of his personal residence. The source of the funds is not controlling. Squires' heavy reliance on this Court's reasoning in *Rosenthal v. Perkins*, 42 N.C. App. 449, 257 S.E. 2d 63 (1979), is misplaced.

The defendants in *Rosenthal* sold their own home through a realtor without disclosing a drainage and flooding condition. This Court, in denying plaintiff's recovery under G.S. § 75-1.1, held that the defendants, private homeowners, were not engaged in commerce. "They did not by the sale of their residence on this one occasion become realtors. It is clear from the cases involving violation of the Unfair Trade Practices Act that the alleged violators must be engaged in a business. . . ." *Rosenthal*, 42 N.C. App. at 454, 257 S.E. 2d at 67. In *Rosenthal* the defendants were private homeowners, rather than realtors. The sale of their own home was an isolated transaction. *See* Aycock, *North Carolina Law on Antitrust and Consumer Protection*, 60 N.C. L. Rev. 207 (1982).

The Squires, on the other hand, were actively engaged in the real estate business. There is substantial evidence in the record suggesting that the acquisition and attempted sale of this house was a business activity. When asked why Mrs. Squires did not sign the release, Mr. Squires responded,

> Because she doesn't usually get involved with releases and signing. It's my business and she's confident and comfortable with the way I transact business, . . . it's my house and her house but I'm more familiar with the transactions in the business than she is—. . . .

On redirect:

> Q. Did you list the house with Mrs. Hawkins on a listing sheet as being owned by you individually or you and your wife?
>
> A. I don't remember, usually just put my name on it.
>
> Q. Whether it's owned by you or you and your wife? She does what you tell her to?
>
> A. In business—

We, therefore, hold that there was sufficient evidence that Squires' conduct was "in or affecting commerce" to withstand a motion for directed verdict.

B. "Unfair or Deceptive Acts or Practices"

We next evaluate whether the evidence of Squires' conduct was sufficient to constitute an "unfair or deceptive act or practice" under G.S. § 75-1.1(a). The terms "unfair" and "deceptive" are not defined within the body of the statute. Our Supreme Court has relied on federal decisions interpreting the identically worded section 5 of the Federal Trade Commission Act in finding that a practice is unfair "when it offends public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *Johnson*, 300 N.C. at 263, 266 S.E. 2d at 621, and deceptive "if it has the capacity or tendency to deceive," *id.* at 265, 266 S.E. 2d at 622; *see also Spiegel, Inc. v. Fed. Trade Comm'n*, 540 F. 2d 287 (7th Cir. 1976). Therefore, coercive tactics are within the definition of unfair practices. 2 Trade Reg. Rep. (CCH) § 7906 (1971); Craswell, *The Identification of Unfair Acts and Practices by The Federal Trade Commission*, 1981 Wisc. L. Rev. 107, 143 (1981). "[A]n essential element of duress or coercion is a *wrongful* act or threat." *Link v. Link*, 278 N.C. 181, 194, 179 S.E. 2d 697, 705 (1971).

Under the terms of the agreement, Wilder was entitled to the return of his entire binder, if, after a good faith effort, he was unable to obtain financing. Whether a prospective home buyer has indeed made a good faith effort is a question for the jury. *Smith v. Currie*, 40 N.C. App. 739, 253 S.E. 2d 645, *disc. rev. denied*, 297 N.C. 612, 257 S.E. 2d 219 (1979). The home buyer need not search for financing indefinitely until he finds a willing lender, nor must he accept financing under oppressive financing terms. He must make a reasonable effort. *See Mezzanotte v. Freeland*, 20 N.C. App. 11, 200 S.E. 2d 410 (1973), *cert. denied*, 284 N.C. 616, 201 S.E. 2d 689 (1974).

From the evidence presented, a jury could find that Wilder had made a good faith effort. Squires, however, threatened Wilder with the loss of his entire binder because he would not accept Squires' financing scheme. Squires had no right to threaten Wilder. Further, Squires' assertion that he was only doing what he thought he had a right to do—negotiate—does not excuse his con-

duct considering the test enunciated by our Supreme Court: "If unfairness and deception are gauged by consideration of the effect of the practice on the marketplace, it follows that the intent of the actor is irrelevant. Good faith is equally irrelevant. What is relevant is the effect of the actor's conduct on the consuming public." *Marshall v. Miller,* 302 N.C. 539, 548, 276 S.E. 2d 397, 403 (1981). Moreover, Squires admitted, on direct examination, that he was not entitled to damages under the terms of the contract.

Q. How were you entitled to it then?

A. Because he agreed to it.

"Duress or coercion may take the form of unlawfully inducing one to make a contract or to perform some other act against his own free will. It may be manifested by threats. . . ." *Fletcher v. Fletcher,* 23 N.C. App. 207, 210, 208 S.E. 2d 524, 527 (1974). Wilder entered Squires' office and asked for the return of his binder. When Squires repeatedly told him that Squires was entitled to damages and that Wilder would not get any of the binder back unless he agreed to Squires' terms, Wilder acquiesced and signed the release. On cross-examination, Wilder exposed the coercive element in the exchange:

Q. Why did you just have blind faith and believe everything Mr. Squires told you at the time?

A. I'm not in the real estate business, he is.

. . .

Q. Were you afraid of Mr. Squires?

A. When he's got $7,200 of my money, I am.

. . .

Q. Now, how do you say Mr. Squires coerced you?

A. He threatened me if I didn't sign this, I wouldn't get my money back.

We conclude that there was sufficient evidence of Squires' coercive conduct to constitute an unfair act or practice and withstand a motion for directed verdict.

The same evidence supports a deceptive act or practice "with the capacity or tendency to deceive." *Johnson,* 300 N.C. at 265, 266 S.E. 2d at 622. Viewed in the light most favorable to Wilder, the evidence tends to show that Squires misrepresented the legal

positions of the parties. Squires, himself, testified that he told Wilder: "Well, according to the laws and rule of real estate, Mrs. Hawkins is entitled to a full commission because I'm willing to finance the house for you." Squires testified further that he told Wilder: "I'll figure up what kind of interest after I talk with Mrs. Hawkins." Squires explained that the $2,460 figure included the interest paid on the house since Squires had taken it out of multiple listings and damages for the time it might take to sell it. Simply put, Wilder was led to believe that his refusal to accept Squires' offer to guarantee the loan entitled Squires to damages. We hold that the evidence of a deceptive act or practice was sufficient to withstand a motion for directed verdict.

Therefore, the trial court did not err in denying Squires' motions for directed verdict.

## II

[2]   Squires next assigns error to issues number 1 and 2 as submitted to the jury:

1. Did the Defendant, J. Ralph Squires, cause $2,460.00 of the funds held in escrow to be paid to him without consent of the Plaintiff?

2. Was the Defendant's conduct in commerce or did it affect commerce?

Squires argues that issue number 1 is too general and does not support the theory upon which recovery is sought. We disagree. Squires also contends that issue number 2 is not supported by the evidence. We have disposed of Squires' second argument in our discussion on Squires' motions for directed verdict.

Returning to Squires' first argument, we note that Squires has neither assigned error to nor included a copy of the jury instructions in the record on appeal. We, therefore, are left to assume that there was no error in the jury instructions. Since an issue is to be construed in the context of the pleadings, the evidence presented, and the pertinent jury instructions, we must assume that the trial court instructed the jury adequately on (a) the elements of a good faith effort; (b) the law of coercion; and (c) the interplay between a good faith effort and the law of coercion. *See Clinard v. Town of Kernersville*, 217 N.C. 686, 9 S.E. 2d 381

(1940). A finding that Squires' conduct was coercive presupposes that Wilder had made a good faith effort to obtain financing. We conclude that the language of issue number 1 adequately supports the theory of coercion, as defined in I, *supra*, the theory relied upon to prove unfair acts or practices.

## III

[3] Squires contends that the issues submitted to the jury do not support any of the trial court's findings of fact or conclusions of law. We disagree.

After the jury determined that Squires' conduct was indeed coercive, the trial court found that:

> Defendant J. Ralph Squires' refusal to allow the return of the $2,460.00 portion of the binder to the Plaintiff, James Collins Wilder, was unwarranted and that the Defendant, J. Ralph Squires had no right to cause the withholding of said funds from the Plaintiff.
>
> FURTHER, the Court determines that Plaintiff was entitled to the return of the total $7,250.00 binder upon his inability to qualify for the conventional loan.
>
> FURTHER, the Court finds that pursuant to the terms of the real estate purchase and sales contract, the Defendant, J. Ralph Squires was not entitled under any circumstances to any portion of the binder.
>
> 2. THE Court further determines that the action of the Defendant, J. Ralph Squires offends established public policy, was unethical, unscrupulous, oppressive and substantially injurious to the consumer, i.e. Plaintiff, James Collins Wilder. Further, Defendant, J. Ralph Squires' actions were deceptive and misleading to the Plaintiff and constitutes an unfair and deceptive trade practice in violation of NCGS 75-1.1.

The trial court concluded that Squires' conduct constituted an unfair *and* a deceptive trade practice.

The trial court's findings reflect the issues inherent in the jury's findings of coercion discussed in II, *supra*. As discussed earlier, coercive conduct is an adequate basis for an "unfair act or practice." Consequently, whether coercive conduct is also an ade-

quate basis for a deceptive trade practice need not be addressed. An unfair act or practice is a sufficient ground, in and of itself, upon which to assess treble damages under N.C. Gen. Stat. § 75-16 (1981).

Squires also argues that the trial judge erred in finding facts based on the evidence, because the factfinding lay within the sole province of the jury. Squires relies on *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975), in which our Supreme Court held that in an action under G.S. § 75-1.1, the jury determines the facts and the trial court then determines as a matter of law whether the defendant engaged in unfair or deceptive trade practices. However, as accurately explained in N.C.P.I. Civil 813.05: "whether a defendant's conduct constitutes an unfair or deceptive trade practice is a question of law for the judge. The jury decides what acts were committed . . ., whether these acts . . . occurred in or affected commerce . . ., whether these acts had an impact on plaintiff . . ., and the amount of damages." The jury decides that the acts were committed, and the judge decides whether these acts violated G.S. § 75-1.1, and trebles the damages pursuant to G.S. § 75-16, if the jury assessed damages. Here, the trial judge recorded in the judgment the findings of fact based on the issues addressed in the absent jury instructions, which were inherent in the jury determination of coercive conduct. The trial judge simply documented the matters that led him to conclude and decide as a matter of law that Squires committed an unfair act or practice. The judge acted according to law, and we find no error.

IV

[4]   Squires' final argument relates to the trial court's award of attorneys' fees to Wilder pursuant to N.C. Gen. Stat. § 75-16.1 (Supp. 1983), which states, in pertinent part:

> In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:

(1) The party charged with the violation has wilfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit. . . .

The findings by the trial court, although they do not specifically track the language of the statute, are sufficient to support the trial court's award of attorneys' fees to Wilder. The trial court found that "Squires' refusal . . . was unwarranted"; that "Squires had no right to cause the withholding of said funds from" Wilder; that "Squires was not entitled under any circumstances to any portion of the binder"; and "that the action of . . . Squires offends established public policy, was unethical, unscrupulous, oppressive and substantially injurious to" Wilder. We therefore affirm the award of attorneys' fees.

V

For the above reasons, the judgment of the trial court is

Affirmed.

Judges JOHNSON and BRASWELL concur.