Denver Prop. Partners, LLC v. Sisson, 2020 NCBC 34.

STATE OF NORTH CAROLINA

LINCOLN COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 725

DENVER PROPERTY PARTNERS,
LLC; and BAYPORT HOLDINGS,
INC. d/b/a DENVER DEFENSE
RANGE & FIREARMS,

Plaintiffs,

v.

BRIAN P. SISSON; LAKE NORMAN
SPORTING ARMS AND RANGE,
INC. d/b/a THE RANGE AT LAKE
NORMAN, d/b/a THE RANGE AT
BALLANTYNE, d/b/a PINEVILLE
GUN SHOP; and THE RANGE AT
DENVER, INC.,

Defendants.

**FINAL ORDER AND JUDGMENT**

1. **THIS CASE** was designated as a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court pursuant to N.C.G.S. § 7A-45.4(b) and assigned to the undersigned Special Superior Court Judge for Complex Business Cases on July 11, 2018. (*See* ECF Nos. 1, 2.)

2. This case came on for trial before a jury duly empaneled on Monday, January 13, 2020 in the Superior Court of Lincoln County. Plaintiff Bayport Holdings, Inc. d/b/a Denver Defense Range & Firearms's ("Plaintiff")[1] claims for breach of contract, conversion, constructive fraud, breach of fiduciary duty, and misappropriation of trade secrets, and Defendants Brian P. Sisson's ("Sisson") and

---

[1] Summary Judgment against Denver Property Partners, LLC's claim for breach of contract was entered by the Court on April 1, 2019, (ECF No. 42), and therefore there were no remaining claims to submit to the jury as to this plaintiff.

Lake Norman Sporting Arms and Range Inc.'s ("LNSAR") (together, "Defendants")[2] claims for breach of contract, fraudulent misrepresentation, constructive fraud, negligent misrepresentation, and conversion were tried to the jury.

3.    The Court denied all motions for directed verdict.  On January 17, 2020, the jury returned its verdict on the issues of liability and damages submitted as follows:

Issue No. 1.    Did Defendant Brian P. Sisson breach a material term of the Management Agreement?

YES.

Issue No. 2.    Did Plaintiff Bayport Holdings, Inc. breach a material term of the Management Agreement?

YES.

Issue No. 3.    If your answer to Issue No. 1 and Issue No. 2 are both YES, who breached a material term of the Management Agreement first?

PLAINTIFF BAYPORT HOLDINGS, INC.

Issue No. 4.    If either: (a) your answer to Issue No. 1 is YES and your answer to Issue No. 2 is NO; or (b) your answer to Issue No. 1 is YES and your answer to Issue No. 3 is DEFENDANT BRIAN P. SISSON, what amount of damages, if any, is Plaintiff Bayport Holdings, Inc. entitled to recover from Defendant Brian P. Sisson for breach of the Management Agreement?

$ 0.00

Issue No. 5.    If either: (a) your answer to Issue No. 2 is YES and your answer to Issue No. 1 is NO; or your answer to Issue No. 2 is YES and your answer to Issue No. 3 is PLAINTIFF BAYPORT HOLDINGS, INC., what amount of damages, if any, is Defendant Brian P. Sisson entitled to recover from Plaintiff Bayport Holdings, Inc. for breach of the Management Agreement?

$ 0.00

---

[2] The Range at Denver, Inc. did not have any claims, nor did Plaintiff request that the Court submit any claims against this defendant to the jury.

Issue No. 6.     Did Defendant Brian P. Sisson owe Plaintiff Bayport Holdings, Inc. a fiduciary duty?

YES.

Issue No. 7.     If your answer to Issue No. 6 is YES, did Defendant Brian P. Sisson breach a fiduciary duty owed to Plaintiff Bayport Holdings, Inc.?

NO.

Issue No. 8.     If your answer to Issue No. 7 is YES, what amount of damages, if any, is Plaintiff Bayport Holdings, Inc. entitled to recover from Defendant Brian P. Sisson for breach of fiduciary duty?

N/A

Issue No. 9.     If your answer to Issue No. 7 is YES, did Defendant Brian P. Sisson use his position of trust and confidence with Plaintiff Bayport Holdings, Inc. to Plaintiff Bayport Holdings, Inc.'s detriment and for the benefit of Defendant Brian P. Sisson?

N/A

Issue No. 10.     If your answer to Issue No. 9 is YES, what amount of damages, if any, is Plaintiff Bayport Holdings, Inc. entitled to recover from Defendant Brian P. Sisson for using his position of trust and confidence with Plaintiff Bayport Holdings, Inc. for his benefit?

N/A

Issue No. 11.     Did Defendant Brian P. Sisson convert Plaintiff Bayport Holdings, Inc.'s property?

NO.

Issue No. 12.     If your answer to Issue No. 11 is YES, what amount of damages, if any, is Plaintiff Bayport Holdings, Inc. entitled to recover from Defendant Brian P. Sisson for converting Plaintiff Bayport Holdings, Inc.'s property?

N/A

Issue No. 13.     If your answer to Issue No. 11 is YES, was Defendant Brian P. Sisson acting as the agent of Lake Norman Sporting Arms and Range, Inc. at the time he engaged in the conduct in question?

N/A

Issue No. 14.    Did Defendant Brian P. Sisson misappropriate Plaintiff Bayport Holdings, Inc.'s trade secrets?

NO.

Issue No. 15.    If your answer to Issue No. 14 is YES, what amount of damages, if any, is Plaintiff Bayport Holdings, Inc. entitled to recover from Defendant Brian P. Sisson for misappropriation of Plaintiff Bayport Holdings, Inc.'s trade secrets?

N/A

Issue No. 16.    If your answer to Issue No. 14 is YES, was Defendant Brian P. Sisson acting as the agent of Lake Norman Sporting Arms and Range, Inc. at the time he engaged in the conduct in question?

N/A

Issue No. 17.    If your answer to one or more of Issue No. 7, or Issue No. 9, or Issue No. 11, or Issue No. 14 is YES, was Defendant Brian P. Sisson's conduct fraudulent, willful, or wanton thereby justifying the award of punitive damages to Plaintiff Bayport Holdings, Inc.?

NO.

Issue No. 18.    If your answer to Issue No. 17 is YES, what amount, if any, is Plaintiff Bayport Holdings, Inc. entitled to recover from Defendant Brian P. Sisson as punitive damage?

N/A

Issue No. 19.    If your answer to Issue No. 13 is YES, what amount, if any, is Plaintiff Bayport Holdings, Inc. entitled to recover from Defendant Lake Norman Sporting Arms and Range, Inc. as punitive damages for the conduct identified in Issue No. 11?

N/A

Issue No. 20.    If your answer to Issue No. 16 is YES, what amount, if any, is Plaintiff Bayport Holdings, Inc. entitled to recover from Defendant Lake Norman Sporting Arms and Range, Inc. as punitive damages for the conduct identified in Issue No. 14?

N/A

Issue No. 21.    Did Plaintiff Bayport Holdings, Inc. convert property belonging to Defendant Lake Norman Sporting Arms and Range, Inc.?

YES.

Issue No. 22.    If your answer to Issue No. 21 is YES, what amount of damages, if any, is Defendant Lake Norman Sporting Arms and Range, Inc. entitled to recover from Plaintiff Bayport Holdings, Inc. for converting Defendant Lake Norman Sporting Arms and Range, Inc.'s property?

$18,500.00

Issue No. 23.    Did Plaintiff Bayport Holdings, Inc. fraudulently misrepresent information, either by making an affirmative misrepresentation to Defendant Brian P. Sisson or by concealing a material fact from Defendant Brian P. Sisson, regarding the sale of Denver Defense?

NO.

Issue No. 24.    If your answer to Issue No. 23 is YES, what amount of damages, if any, is Defendant Brian P. Sisson entitled to recover from Plaintiff Bayport Holdings, Inc. as a result of Plaintiff Bayport Holdings, Inc.'s fraudulent conduct?

N/A

Issue No. 25.    Did Plaintiff Bayport Holdings, Inc. negligently misrepresent information to Defendant Brian P. Sisson regarding the sale of Denver Defense?

YES.

Issue No. 26.    If your answer to Issue No. 25 is YES, what amount of damages, if any, is Defendant Brian P. Sisson entitled to recover from Plaintiff Bayport Holdings, Inc. for Plaintiff Bayport Holdings, Inc.'s negligent misrepresentation?

$3,000.00

Issue No. 27.    Did Plaintiff Bayport Holdings, Inc. owe Defendant Brian P. Sisson a fiduciary duty?

NO.

Issue No. 28.    If your answer to Issue No. 27 is YES, did Plaintiff Bayport Holdings, Inc. breach its fiduciary duty owed to Defendant Brian P. Sisson?

N/A

Issue No. 29.    If your answer to Issue No. 28 is YES, did Plaintiff Bayport Holdings, Inc. use its position of trust and confidence with Defendant Brian P. Sisson to Defendant Brian P. Sisson's detriment and for the benefit of Plaintiff Bayport Holdings, Inc.?

N/A

Issue No. 30.    If your answer to Issue No. 29 is YES, what amount of damages, if any, is Defendant Brian P. Sisson entitled to recover from Plaintiff Bayport Holdings, Inc. for Plaintiff Bayport Holdings, Inc.'s constructive fraud?

N/A

Issue No. 31.    If your answer to Issue No. 21 is YES, was Plaintiff Bayport Holdings, Inc.'s conduct fraudulent, willful, or wanton thereby justifying the award of punitive damages to Defendant Lake Norman Sporting Arms and Range, Inc.?

YES.

Issue No. 32.    If your answer to Issue No. 31 is YES, what amount, if any, is Defendant Lake Norman Sporting Arms and Range, Inc. entitled to recover from Plaintiff Bayport Holdings, Inc. as punitive damages?

NONE.

Issue No. 33.    If your answer to one or more of Issue No. 23, Issue No. 25, or Issue No. 29 is YES, was Plaintiff Bayport Holdings, Inc.'s conduct fraudulent, willful, or wanton thereby justifying the award of punitive damages to Defendant Brian P. Sisson?

NO.

Issue No. 34.    If your answer to Issue No. 33 is YES, what amount, if any, is Defendant Brian P. Sisson entitled to recover from Plaintiff Bayport Holdings, Inc. as punitive damages?

N/A

Issue No. 35.    Did Defendant Brian P. Sisson take advantage of a position of trust and confidence to do one or more of the following:
   a. Take hard copies or electronically stored version of Plaintiff Bayport Holdings, Inc.'s customer list?

YES.

   b. Bring about the closing of Denver Defense (the business)?

NO.

   c. Operate Denver Defense (the business) under Defendant Lake Norman Sporting Arms and Range, Inc. bank account?

YES.

d. Purchase serialized inventory under Plaintiff Bayport Holdings, Inc.'s Federal Firearms License while paying for that inventory with Defendant Lake Norman Sporting Arms and Range, Inc.'s funds?

NO.

e. Commingle Plaintiff Bayport Holdings, Inc.'s operating finances with Defendant Lake Norman Sporting Arms and Range, Inc.'s funds?

YES.

f. Eliminate Plaintiff Bayport Holdings, Inc. as a competitor?

NO.

Issue No. 36. If your answer to any subpart of Issue No. 35 is YES, what amount of damages, if any, is Plaintiff Bayport Holdings, Inc. entitled to recover from Defendant Brian P. Sisson?

$1.00

Issue No. 37. If your answer to any subpart of Issue No. 35 is YES, was Defendant Brian P. Sisson acting as the agent of Defendant Lake Norman Sporting Arms and Range, Inc. at the time he engaged in the conduct in question?

NO.

Issue No. 38. Did Plaintiff Bayport Holdings, Inc. provide misleading inventory numbers to Defendant Brian P. Sisson in order to entice him to enter into the Management Agreement?

YES.

Issue No. 39. Did Plaintiff Bayport Holdings, Inc. provide misleading revenue numbers to Defendant Brian P. Sisson in order to entice him to enter into the Management Agreement?

NO.

Issue No. 40. Did Plaintiff Bayport Holdings, Inc. fail to notify Defendant Brian P. Sisson prior to signing the Management Agreement that Plaintiff Bayport Holdings, Inc. was in default on the bank loans?

YES.

Issue No. 41.    Did Plaintiff Bayport Holdings, Inc. fail to notify Defendant Brian P. Sisson prior to signing the Management Agreement that Plaintiff Bayport Holdings, Inc. had not paid several vendors and these vendors would no longer ship to Plaintiff Bayport Holdings, Inc.?

YES.

Issue No. 42.    Did Plaintiff Bayport Holdings, Inc. fail to notify Defendant Brian P. Sisson prior to signing the Management Agreement that Plaintiff Bayport Holdings, Inc.'s shareholders had contributed in excess of $207,000 into Plaintiff Bayport Holdings, Inc. in 2017 to keep the business alive?

YES.

Issue No. 43.    If your answer to one or more of Issue Nos. 38 – 42 is YES, what amount of damages, if any, is Defendant Brian P. Sisson entitled to recover from Plaintiff Bayport Holdings, Inc. for the conduct of Plaintiff Bayport Holdings, Inc. as you have found occurred in answering YES to one or more of Issue Nos. 38 – 42?

$4.50

4.    Both Plaintiff and Defendants brought claims for unfair or deceptive trade practices pursuant to N.C.G.S. § 75-1.1, *et. seq.*  While all factual issues were submitted to the jury, "it is a question of law for the court as to whether [the] proven facts constitute an unfair or deceptive trade practice."  *United Labs., Inc. v. Kuykendall (Kuykendall I),* 322 N.C. 643, 664, 370 S.E.2d 375, 389 (1988) (citation omitted).  Accordingly, whether the proven conduct of either Plaintiff or Defendants was unfair or deceptive is an issue appropriate for the Court to determine in this Final Judgment.

5.    The parties stipulated on the record that, during all relevant times, the parties' conduct was "in or affecting commerce."  Therefore, the sole question before the Court is whether any party's conduct was unfair or deceptive.  An act or practice is considered unfair when "it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious

to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). An act or practice is deceptive when it has the tendency to deceive. *Id.*

6. Unfairness and deception, thus, are gauged by consideration of the effect of the conduct on the marketplace. *Wilder v. Squires*, 68 N.C. App. 310, 316, 315 S.E.2d 63, 66 (1984). Therefore, "it follows that the intent of the actor is irrelevant; good faith is equally irrelevant. What is relevant is the effect of the actor's conduct on the consuming public." *Id.; see also Edwards v. West*, 128 N.C. App. 570, 575, 495 S.E.2d 920, 924 (1998) ("[D]eliberate acts of deceit or bad faith do not have to be shown. Instead, [a] plaintiff[ ] must demonstrate the act possessed the tendency or capacity to mislead, or created the likelihood of deception." (internal citations and quotation marks omitted)).

7. If proven conduct is determined to be unfair or deceptive pursuant to section 75-1.1, "and if damages are assessed[,] in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict." N.C.G.S. § 75-16. Further, in the Court's discretion, attorneys' fees may be awarded to the prevailing party if "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit[.]" *Id.* § 75-16.1.

8. Following the jury's return of the verdict, the Court entered a Briefing Order Regarding Post-Trial Matters, (ECF No. 78), giving both Plaintiff and Defendants an opportunity to file briefs in further support of their respective UTDP claims and motions for award of attorneys' fees and set a deadline of March 4, 2020

for any submissions in this regard. Thereafter, on March 4, 2020, Defendants filed Defendants' Memorandum in Support of Defendants' Sixth Counterclaim for Unfair and Deceptive Trade Practices, (ECF No. 79), Defendants' Motion for Attorney's Fees, (ECF No. 80), and Defendants' Memorandum in Support of Motion for Attorney's Fees, (ECF No. 81). Defendants did not timely submit any affidavits or other evidence in support of their Motion for Attorney's Fees. Rather, nine days later, on March 13, 2020, Defendants submitted two affidavits: one from Mr. Christopher P. Gelwicks, (ECF No. 84), and one from Mr. Kevin M. Sisson, (ECF No. 84).

9. On March 4, 2020, Plaintiff filed Plaintiffs' [sic] Motion to Tax Costs and Attorneys' Fees, (ECF No. 82), and Memorandum of Law in Support of Plaintiffs' [sic] Motion to Tax Costs and Attorney's Fees, (ECF No. 83). Plaintiff filed as Exhibit A to its Motion to Tax Costs and Attorney's Fees the Affidavit of Michael K. Elliot. (*See* ECF No. 83.) Plaintiff did not file a brief in further support of its UDTP claim.

10. The Court first addresses whether the parties have demonstrated that the opposing side engaged in unfair or deceptive acts consistent with section 75-1.1. A number of the issues submitted to the jury regarding other substantive claims potentially implicate section 75-1.1. In addition, at the request of the respective parties, the Court submitted to the jury a number of issues requesting that the jury determine whether the opposing party or parties had engaged in specific conduct that was claimed to be unfair or deceptive. For purposes of determining whether any conduct found by the jury was unfair or deceptive, the Court has considered each of the issues where the jury found some misconduct resulting in damage.

11. First, as to Plaintiff's UDTP claim against Sisson and LNSAR, in answer to Issue No. 35, the jury found that Sisson took advantage of a position of trust and confidence[3] with Plaintiff by taking hard copies or electronically stored version(s) of Plaintiff's customer list, by operating Denver Defense (the business) under LNSAR's bank account, and by commingling Plaintiff's operating finances with LNSAR's funds. The Court concludes that these acts are "unfair" for purposes of section 75-1.1. By commingling the funds of Plaintiff's with that of a competing business, Sisson was acting in an unethical manner, and confusing the public as to with whom Plaintiff's customers were engaging in business—Plaintiff or LNSAR. Accordingly, the Court finds that Sisson's conduct was unfair and that damages awarded in this regard should be trebled. In answer to Issue No. 36, the jury found that the amount of damages Plaintiff was entitled to recover from Sisson was one dollar ($1.00). Accordingly, the damages Plaintiff is entitled to recover from Sisson pursuant to section 75-16 is three dollars ($3.00).[4] In answer to Issue No. 37, the jury did not find that Sisson was acting as an agent of LNSAR at the time he engaged in the conduct in question. Accordingly, Plaintiff has not proven its UDTP claim against LNSAR and is not entitled to recover from that defendant.

---

[3] In answer to Issue No. 6, the jury found that Sisson owed Plaintiff a fiduciary duty, but that there was no breach of that duty. Accordingly, based on the jury verdict, these findings do not support Plaintiff's breach of fiduciary duty or constructive fraud claims.

[4] "Although certain [causes of action], standing alone, may evoke the action, a claim for unfair and deceptive trade practices pursuant to N.C.G.S. § 75-1.1 is an independent claim that stands alone as a distinct action[.]" *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 2003 NCBC LEXIS 6, at *139 (N.C. Super. Ct. May 2, 2003). Accordingly, Plaintiff can succeed on its UDTP claim even if the jury returned a verdict against it on all other claims.

12.     As to Sisson's and LNSAR's UDTP claims against Plaintiff, in answer to Issue Nos. 21 and 22, the jury found that Plaintiff converted property belonging to LNSAR and that LNSAR was entitled to recover $18,500 for this conduct. While the conversion of property can be an unfair or deceptive act, *see, e.g., Faucette v. 6303 Carmel Rd., LLC*, 242 N.C. App. 267, 276, 775 S.E.2d 316, 323 (2015), it is not *per se* unfair or deceptive.[5]

13.     The Court determines that Plaintiff's conversion of LNSAR's property was not unfair or deceptive.  Upon the record as a whole, including the evidence presented by Defendants regarding the handling by Plaintiff of Defendant's property, the Court concludes that Plaintiff did not act in any way that was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, nor did Plaintiff's acts in this regard have the tendency or capacity to mislead.  The jury's finding that Sisson operated Denver Defense (the business) under LNSAR's bank account and commingled Plaintiff' operating finances with LNSAR's funds indicates that who owned what guns at relevant periods was subject to uncertainty, and does

---

[5] The Court notes that the jury, in answer to Issue No. 31, found that Plaintiff's conversion of LNSAR's property was "fraudulent, willful, or wanton" for purposes of punitive damages. Notwithstanding this finding, the jury declined—in its discretion—to award punitive damages regarding LNSAR's conversion counterclaim. While a plaintiff (or, in this case, a counterclaimant) is permitted to recover punitive damages and damages stemming from a UDTP claim regarding the same conduct, the plaintiff is not entitled to both awards and must choose between the two if both are awarded. *Compton v. Kirby*, 157 N.C. App. 1, 21, 577 S.E.2d 905, 918 (2003).  In this case, the jury elected not to award LNSAR any punitive damages, and therefore, if the Court determines that Plaintiff's conversion of LNSAR property was unfair or deceptive under section 75-1.1, then LNSAR would be entitled to an award pursuant to section 75-16.  A finding by the jury that Plaintiff's conduct was "fraudulent, willful, or wanton" to warrant the imposition, in its discretion, of punitive damages bears no consideration on the Court's decision to find (or not find) that same conduct unfair or deceptive. *See Estate of Hurst v. Moorehead I, LLC*, 228 N.C. App. 571, 585, 748 S.E.2d 568, 578 (2013) ("[T]he issues of fraud and punitive damages are separate and distinct claims from the issue of unfair and deceptive trade practices.").

not, in the Court's discretion, support the conclusion that Plaintiff acted unfairly or deceptively by selling certain guns left in its store after the deterioration of the parties' business relationship. Accordingly, the Court concludes that LNSAR is not entitled to recover on its UDTP claim against Plaintiff in this regard.

14. In answer to Issue Nos. 25 and 26, the jury found that Plaintiff negligently misrepresented information to Sisson regarding the sale of Denver Defense and that, for this conduct, Sisson was entitled to recover $3,000 from Plaintiff. Upon the record as a whole, the Court concludes that Plaintiff acted in a way that had the capacity to mislead, or created the likelihood of deception, even if not intentional, by engaging in this conduct and Plaintiff's conduct, thus, was "deceptive" for purposes of section 75-1.1. Therefore, the Court concludes that Sisson is entitled to recover on his UDTP claim against Plaintiff in this regard and is entitled to treble damages. Accordingly, the damages Sisson is entitled to recover from Plaintiff pursuant to section 75-16 is $9,000.000.

15. In answer to Issue No. 38, the jury found that Plaintiff provided misleading inventory numbers to Sisson in order to entice him to enter into the Management Agreement. The jury also found that Plaintiff failed to notify Sisson prior to signing the Management Agreement that: (a) Plaintiff was in default on its bank loans (Issue No. 40); (b) Plaintiff had not paid several vendors and these vendors would no longer ship to Plaintiff (Issue No. 41); and that (c) Plaintiff's shareholders had contributed in excess of $207,000 into Plaintiff in 2017 to keep the business alive (Issue No. 42). As to the conduct proven in Issue Nos. 38, 40, 41, and 42, the jury found that Sisson was entitled to recover $4.50 from Plaintiff. Upon the

record as a whole, the Court concludes that the jury's finding in answer to Issue No. 38 that Plaintiff provided misleading inventory numbers to Sisson in order to entice him to enter into the Management Agreement had the capacity to deceive and therefore was "deceptive" for purposes of section 75-1.1. The Court concludes, however, that Plaintiff's failure to disclose all of Plaintiff's business struggles, as set forth in Issue Nos. 40, 41, and 42, were neither unfair nor deceptive for purposes of section 75-1.1. In answer to Issue No. 43, the jury found Defendants were entitled to $4.50 for the conduct set forth in Issue No. 38. Accordingly, the damages Sisson is entitled to recover from Plaintiff pursuant to section 75-16 is $13.50 for this conduct.

16. In sum, the Court concludes that Plaintiff has proven its UDTP claim against Sisson and is entitled to trebled damages of three dollars ($3.00) for Sisson's unfair conduct. Further, Sisson has proven his UDTP claim against Plaintiff and is entitled to trebled damages of $9,013.50. LNSAR, however, has not proven its UDTP claim against Plaintiff and therefore LNSAR is not entitled to recover for its counterclaim in this regard, nor is LNSAR entitled to attorneys' fees arising from pursing its UDTP counterclaim.

17. The Court next addresses whether either Plaintiff or Sisson is entitled to their attorneys' fees for their respective UDTP claims pursuant to section 75-16.1. Under this statutory provision, a "plaintiff [or counterclaimant] must also show [in addition to a violation of section 75-1.1] that there was an unwarranted refusal by the defendant to fully resolve the matter which constitutes the basis of the suit." *United Labs., Inc. v. Kuykendall (Kuykendall II)*, 335 N.C. 183, 190, 437 S.E.2d 374,

378 (1993). The Court does not believe either side was unwarranted in refusing to resolve this matter. In fact, both sides presented evidence in support of their positions, and ultimately the parties' underlying conduct required the jury to resolve disputed issues of material fact that could have supported, or refuted, Plaintiff's and Sisson's conduct that ultimately supported the parties' respective UDTP claims. Accordingly, the Court, in its discretion, declines to award attorneys' fees to Plaintiff or Sisson pursuant to section 75-16.1.

18. Finally, the Court turns to Defendants' argument that they are entitled to attorneys' fees because Paragraph 18 of the Management Agreement between "Denver Defense/ Bayport Holdings[,]" on the one hand, and Sisson, on the other hand, (Ex. B to Compl., ECF No. 3), contains a "reciprocal attorney's fees provision" which states that if the Management Agreement "needs to be enforced[,] the winning party is entitled to receive costs and reasonable attorney's fees." In support of their position, Defendants cite to N.C.G.S. § 6-21.6(c), which provides that if "a business contract governed by the laws of this State contains a reciprocal attorneys' fees provision, the court or arbitrator in any suit, action, proceeding, or arbitration involving the business contract may award reasonable attorneys' fees in accordance with the terms of the business contract."

19. In response to this argument, Plaintiff points to the definition of "business contract" under section 6-21.6(a)(1), which expressly excludes an "employment contract." An "employment contract is defined in section 6-21.6(a)(3) as "[a] contract between an individual and another party to provide personal services by that individual to the other party, whether the relationship is in the nature of employee-

employer or principal-independent contractor." Plaintiff also contends that, based on the parties' stipulations and the evidence submitted at trial, the Management Agreement was an agreement between Plaintiff and Sisson whereby Sisson would manage Plaintiff's business.

20. The Court concludes that paragraph 18 of the Management Agreement does not entitle either Sisson or LNSAR to payment of any or all of their attorneys' fees. First, at best, the contract is ambiguous as to whether it is a business contract or an employment contract. Where an ambiguity exists, "the court is to construe the ambiguity against the drafter[.]" *Sears Roebuck & Co. v. Avery*, 163 N.C. App. 207, 221, 593 S.E.2d 424, 434 (2004). In this case, the parties stipulated that Sisson was the drafter of the Management Agreement. The Court, therefore, concludes that the Management Agreement is an employment contract expressly excluded from section 6-21.6.

21. Moreover, the Court concludes that even if the Management Agreement was a "business contract," the language of Paragraph 18 is unenforceable as written. Section 6-21(b)(4) provides that a reciprocal attorneys' fees provision is a provision in a

> written business contract by which each party to the contract agrees . . . *upon the terms and subject to the conditions set forth in the contract that are made applicable to all parties*, to pay or reimburse the other parties for attorneys' fees and expenses incurred by reason of any suit, action, proceeding, or arbitration involving the business contract.

*Id.* § 6-21.6(b) (emphasis added).

22. Paragraph 18 does not set forth any terms or conditions regarding the payment or reimbursement for attorneys' fees and expenses, nor does the provision

expressly incorporate the factors set forth in 6-21.6(c) to guide the Court in its analysis. Accordingly, the Court concludes that it cannot enforce the reciprocal attorney's fees provision as drafted and Defendants are not entitled to attorneys' fees on that basis.

23. Lastly, Defendants' Memorandum in Support of Motion for Attorney's Fees was not properly supported by affidavits setting forth the costs and fees incurred by Defendants in pursing their counterclaims. As noted above, the Court gave the parties a deadline of March 4, 2020 to file their motions for attorneys' fees. While Defendants timely filed their motion, that motion was not accompanied by any affidavits from counsel. Instead, nine days after the deadline, Defendants' counsel untimely submitted two affidavits for the Court's consideration. Not only were these filings late pursuant to an express order of this Court, but Rule 6(d) of the North Carolina Rules of Civil Procedure provides that "[w]hen a motion is supported by affidavit, the affidavit shall be served with the motion[.]" *Id.* § 1A-1, Rule 6(d). Defendants failed to comply with both the Rules of Civil Procedure and an order of this Court. Accordingly, the Court, in its discretion, declines to consider the affidavits submitted in support of Defendants' Motion for Attorney's Fees and, therefore, has no basis upon which to determine an award of attorneys' fees.[6]

---

[6] Even if the Court was disposed to consider the affidavits, and even if Paragraph 18 of the Management Agreement otherwise provided a proper basis for an award of attorneys' fees, the Court concludes that the affidavits submitted fail to explain what portion of the work performed by counsel for Defendants related to Sisson's enforcement of the Management Agreement as opposed to other issues involved. The Court also notes that Defendants' counsel performed services for both Sisson and LNSAR but, as between them, only Sisson was a party to the Management Agreement and only he would have arguably been entitled to recover attorneys' fees.

24.    **IT IS THEREFORE ORDERED,** based on the verdict of the jury and the Court's conclusions of law as set forth herein:

A. That judgment is entered for Plaintiff as to its claim for unfair and deceptive trade practices against Sisson in the amount of $3.00.

B. That judgment is entered for Defendant LNSAR as to its conversion of property claim against Plaintiff and Plaintiff shall pay to LNSAR damages in the amount of $18,500.00.

C. That judgment is entered for Sisson as to his claim for negligent misrepresentation against Plaintiff, which constitutes as an unfair or deceptive trade practice, and accordingly Plaintiff shall pay to Sisson damages in the amount of $9,000.00.

D. That judgment is otherwise entered for Sisson as to his UDTP claim against Plaintiff for Plaintiff misleading its inventory numbers to Sisson in order to entice him to enter into the Management Agreement, and Plaintiff shall pay to Sisson damages in the amount of $13.50.

E. That all other claims brought by the parties to this lawsuit, except as those explicitly set forth in subparagraphs A–D of this paragraph, are hereby entered in favor of the defending party thereto and these claims are **DISMISSED WITH PREJUDICE**.

F. The foregoing represents a complete and final disposition of all claims in this case.

G. The Court shall address, if necessary, the taxation of costs as may be submitted by a party claiming entitlement to the same based on this Final

Judgment.  Any such submission shall be made by separate motion supported by one or more affidavits, documentary receipts, and a brief in support.

**SO ORDERED**, this the 23rd day of April, 2020.

/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases